IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CR-00162-F-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| QUINTIN DONTE HAYES, | ) | |
| Defendant. | ) | |

This matter is before the court on Quintin Donte Hayes' Corrected Motion to Suppress [DE-27]. The undersigned conducted a suppression hearing on October 23, 2013. At the hearing, the Government was represented by Assistant United States Attorney Toby W. Lathan. Hayes was present and represented by Assistant Federal Public Defender Joseph L. Ross, II. This case is presently scheduled for arraignment and trial before the undersigned during the November 4, 2013 term of court.

Based on the evidence produced during the October 23, 2013 suppression hearing, the court renders the following:

**FINDINGS OF FACT**

Officer Joshua Correll is a patrol officer with the Raleigh Police Department. Officer Correll's area of patrol covers Beat 412, which is located in the Southeast District of Raleigh, North Carolina. Beat 412 is located in a high-crime area.

On the night of January 4, 2013, at approximately 11:00 p.m., Officer Correll was working the night shift and was on regular patrol within Beat 412. Officer Correll was traveling north on North Tarboro Street in a marked patrol car with a visible external light bar. Officer Correll noticed an individual, later identified as Quintin Hayes, walking on the sidewalk in the

opposite direction that Officer Correll was traveling. Officer Correll could see that Hayes had his left hand in his pocket, and his right hand was free. Officer Correll saw Hayes look over his shoulder numerous times while Officer Correll had him in his line of sight. Officer Correll described Hayes' behavior as "mildly suspicious."

Officer Correll proceeded on with his patrol and spoke briefly with a concerned citizen[1]. The concerned citizen said that he or she had seen an individual and believed the person was involved with narcotics. The individual that the concerned citizen described matched the description of Hayes. Officer Correll decided to look for and talk with Hayes.

Officer Correll was traveling north on Pettigrew Street when he saw a person he believed to be the individual he had seen earlier on North Tarboro Street. Officer Correll noticed that as his patrol car slowed down Hayes' gait also slowed down. Officer Correll stopped his patrol car to speak with Hayes, but he did not initiate the siren or lights on his patrol car. As soon as Officer Correll's car door opened, and before he had a chance to speak, Hayes turned away from Officer Correll and began sprinting.

Officer Correll believed that Hayes' behavior was suspicious, and Officer Correll proceeded to chase Hayes through several yards. While running, Officer Correll issued several loud commands for Hayes to stop, but Hayes failed to comply. Officer Correll saw Hayes look over his shoulder several times to see if Officer Correll was still behind him, but Hayes did not respond to Officer Correll's commands to stop.

Officer Correll was able to catch up with Hayes when Hayes unsuccessfully attempted to

---

[1] In the interest of safety, the Government did not want to disclose the identify of the concerned citizen. The undersigned finds that the information provided by the concerned citizen is of no consequence, as reasonable suspicion existed without this information.

2

climb over a chain link fence. Officer Correll grabbed the back of Hayes' jacket and "escorted" him to the ground. Hayes was on his stomach on the ground and Hayes' hands were tucked under his head. Officer Correll issued loud, clear commands for Hayes to give Officer Correll his hands, but Hayes did not comply. Officer Correll tried to wrestle Hayes' arms out from underneath him to make sure that there was no weapon present, but Officer Correll was not successful. Officer Correll then grabbed Hayes by his jacket around the scruff of the neck and raised him slightly off the ground. Officer Correll then noticed a revolver on the ground, and he moved the weapon a safe distance away.

Additional officers arrived on the scene and helped Officer Correll secure Hayes in handcuffs. While Hayes was in handcuffs on the ground, he made comments which were not made in response to questions. Specifically, Hayes stated that he had just acquired the gun from a kid that didn't need to have it.

## DISCUSSION

In his motion, Hayes argues that the evidence seized as a result of the search of his person on January 4, 2013, a revolver and ammunition, were seized in violation of his rights to be free from unreasonable search and seizure. Accordingly, Hayes contends that this court should suppress the revolver and ammunition.

The Fourth Amendment requires that all government searches and seizures must be reasonable. *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995). "Reasonable suspicion" justifies an investigatory stop when an officer believes that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Under the "reasonable suspicion" standard, a police officer may conduct a brief investigatory stop if he has a reasonable suspicion grounded in specific and articulable

3

Case 5:13-cr-00162-F Document 37 Filed 10/25/13 Page 3 of 5

facts that the person he stopped has been or is about to be involved in a crime. *United States v. Hensley*, 469 U.S. 221, 227 (1985). An investigatory stop does not require a finding of probable cause when a "reasonable suspicion of illegal activity" exists. *United States v. Harris*, 39 F.3d 1262, 1269 (4th Cir. 1994).

The undersigned concludes that Officer Correll had reasonable suspicion to stop Hayes. Initially, Hayes was seen in a high crime area of southeast Raleigh, North Carolina. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (Although evidence that a stop occurred in a high-crime area may not be sufficient, standing alone, to give rise to reasonable suspicion, it can be a contributing factor). Also, Hayes was seen late at night. *See United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) ("The lateness of the hour is another fact that may raise the level of suspicion.") When Officer Correll originally drove past Hayes in a marked patrol car, Hayes made furtive movements upon seeing the officer. *See Wardlow*, 528 U.S. at 119 ("Nervous, evasive behavior is another pertinent factor in determining reasonable suspicion [.]"); *United States v. Sims*, 296 F.3d 284, 287 (4th Cir. 2002) (An officer can consider whether evasive behavior exists when assessing a street corner encounter.) Finally, and most significantly, when Hayes saw Officer Correll open the door of his patrol car, Hayes took off running. *See Wardlow*, 528 U.S. at 119 ("[H]eadlong flight is the consummate act of evasion.")

In his motion to suppress, Defendant relies upon *Florida v. J.L.*, 529 U.S. 266 (2000). In *J.L.*, the officers' suspicion that J.L. was carrying a weapon arose solely from a tip from an unknown location and was made by an unknown caller. The Supreme Court concluded that "an anonymous tip that a person is carrying a gun [is not], without more, sufficient to justify a police officer's stop and frisk of that person." *Id.* at 268. In this case, however, Officer Correll's

4

reasonable suspicion was based on a much stronger foundation than merely an anonymous tip.

## SUMMARY

In summary, and for the foregoing reasons, Hayes' Corrected Motion to Suppress [DE-27] is DENIED.

SO ORDERED.

This, the 25th day of October, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge